## CONTINUATION OF APPLICATION FOR SEARCH WARRANT

Based on my knowledge, training and experience, and the investigation of law enforcement officers with personal knowledge and with whom I am working, I, Geoffrey Yandl, being duly sworn, depose and state as follows:

### INTRODUCTION

1. Based on the information set forth below, there is probable cause to believe that evidence of violations of federal law, specifically 18 U.S.C. §§ 875(c) [Interstate Communication with a Threat to Injure] and 2261A [Stalking] (the **Subject Offenses**), will be found on the following devices: a Hewlett-Packard laptop computer and a SanDisk thumb drive seized on May 2, 2022 from inside a 2022 Jeep Grand Cherokee, which was rented to Mitchell Pierce on April 30, 2022 following a vehicle search (hereinafter the **Subject Devices**). The **Subject Devices** are further described in Attachment A, and the categories of electronically stored information and evidence sought are described in Attachment B.

2. This Application requests the issuance of a warrant to examine the **Subject Devices** for evidence of the **Subject Offenses**.

### APPLICANT'S TRAINING AND EXPERIENCE

3. I am a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and have been since 2007. I have received training in the investigation of firearms crimes and other federal violations. I have learned the methods by which firearms are illegally trafficked and possessed through professional experience as well as my association with other members of law enforcement.

1

4. I also know that people involved in threatening, stalking and harassment crimes frequently use computers and internet connections to create fake user accounts, attempt to hide their identities, steal identities, and provide false information in furtherance of their crimes and to evade detection.

5. I also know from training and experience that people often use portable computers, laptop computers and portable electronic storage devices to access the internet and communicate via various means, including by social media, email, and voice over internet, and to store electronic data including photos, videos, documents, records, internet searches, passwords, financial transactions, and proof of ownership. Computers and electronic storage devices store data that can be recovered forensically even after deletion by the user. Often times Global Positioning System (GPS) data is recovered indicating the location of the device at given points in time, providing evidence that the device, and therefore the user, was located in the vicinity of a crime. Furthermore, computers generate internet use history that can reveal the websites or internet queries entered by the person using the device, including searching for the addresses of various businesses or other locations.

## PROBABLE CAUSE

6. Mitchell Pierce is a 44-year-old male who has five prior felony convictions. He is currently incarcerated at the Newaygo County Jail and is pending trial for the federal offenses of 18 U.S.C. § 922(g)(1) [Possession of firearms by a person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year] and 18 U.S.C. § 2261A [Stalking].

7. Mitchell Pierce has the following criminal convictions.

   a) misdemeanor domestic violence (2010);

   b) felony interfering with electronic communications and felony police officer fleeing and eluding (2011);

   c) felony assault with a dangerous weapon (2012);

   d) felon in possession of firearms and felony firearm (2014);

   e) felony aggravated stalking, and felony using a computer to commit a crime (2014);

   f) felony assault with a dangerous weapon (2021).

8. In July 2021, the defendant pleaded no contest to a felonious assault against M.S.[1] He was sentenced to probation and was required as a condition of that probation to "have no verbal, written, electronic, or physical contact with" M.S.

9. Beginning on or about December 8, 2021, local law enforcement began investigating Mitchell Pierce for harassing, stalking, and threatening to kill M.S., her family, and others. Numerous police reports document Pierce's harassing, threatening, and violent messages and emails, pictures, and videos to M.S. and others. Some of the incidents reported to police are detailed below.

   a.  On December 8, M.S. reported six calls and three texts from the defendant. On December 11, M.S. reported numerous text messages from the defendant, including pictures of firearms and a message where the defendant stated "I went and got these because I'm ready to start blowing ppl away and die suicide by

---

[1] The full name, identity, and contact information of M.S. are known to me but are not included here to protect her privacy.

cop." M.S. continued to report telephone and text contacts by the defendant on December 21, 2021, February 1, 2022, March 17 and 28, 2022, and April 10, 2022.

    b.    On April 22, 2022, M.S. received an email which read in part:

> Think what you want, I promised you that if cheated or fucked me over I would kill you. You have betrayed me way more then I betrayed you. I asked you to call however you just wanted a Nigger dick.. let me tell ya.. you really fucked up.. I will kill you bitch.. 100% you are going to fucking die. I was going to let you and the boys live if you called me and actually talk.. instead you wanted to play with me.. M▮▮▮▮ this is you last chance.. if you don't call today I will fucking murder you and it's not going to be a fast death. I am going to torture you for hours.. your cause of death is going to be decapitation, but before that happens you will kill all your children while while it's recorded then your going to be tied up and be cut with a razor blade at 2 inch slices all over your entire body. You will be fucked by a baseball bat wrapped in Barbed wire, all while being recorded. You will be tortured for aprox 18 hours before your actually beheaded. Your entire family is about to die because of you.

    c.    On April 23, 2022, M.S. reported to the Fruitport Township Police that she received nine emails from Mitchell Pierce in which he threatened to torture and kill M.S. and her children and commit a school shooting where her children attend school if M.S. did not answer her phone when he called.

    d.    On April 27, 2022, M.S. reported to police that Pierce had sent her a hit list, which included an ex-boyfriend of hers, M.B.[2] M.B. later reported that "M.S." had reached out to him on Facebook, but during the conversation, M.B. realized it was a fake account for M.S. created by Pierce when he received messages like the ones below:

> From: 100079784537563 M▮▮▮▮ S▮▮▮▮ (owner)
> **Hey just wanted to let you know**
> Platform: Mobile
>
> 4/28/2022 2:57:07 AM(UTC+0)
>
> Source Extraction:
> File System (2)
> Source Info:
> Universal_Android Access.zip/data/data/com.facebook.orca/databases/threads_db2 :
> 0x5E6AD (Table: messages; Size: 512000 bytes)

---

[2] The full name, identity, and contact information of M.B. is known to me but is not included here to protect his privacy.



e. On April 29, 2022, attorney J.W. and C.W.[3] reported to the Muskegon Police Department that Pierce had sent an email to them threatening to kill their children if they did not repay Pierce money for legal services. J.W. represented Pierce in his felonious assault case in 2021; his wife, C.W., represented Pierce in his divorce from M.S.  In the email, Pierce correctly identified where their daughter had attended school and the city in which she now lived. Pierce also listed their daughter's employer in his email. The email ended with "tonight the cash better be in my bank or your kids are dead." Mitchell Pierce also made several

---

[3] The full names, identities, and contact information of J.W. and C.W. are known to me but are not included here to protect their privacy.

phone calls to their law office, threatening on one of them, "who do I need to come down there and shoot?"

        f.      On May 2, 2022, M.S. reported to the Fruitport Township Police that she received voicemails, videos, and photos from Pierce. One video Pierce sent was of her house, taken from the driver's seat of a vehicle as it drove by the house at night. Law enforcement investigation indicated that Mitchell Pierce was in the area at the time. Additionally, M.S. received an audio file to her phone of what sounded like multiple gunshots being fired.

        g.      M.S., J.W., C.W., and M.B. are all residents of the Southern Division of the Western District of Michigan. Facebook Messenger, the internet, email, and cell phones and text messages are all facilities of interstate commerce.

    10.      On May 2, 2022, the Muskegon Township Police received a report from M.S. that she had just hit Pierce with her car. She was driving when she noticed Pierce following her in a white Jeep Grand Cherokee. She pulled into a parking lot on Apple Avenue and he followed. Pierce exited the Jeep and attempted to confront M.S. as she sat in her parked car. M.S. called 911 to report Pierce's location. M.S. reported that as he approached her, she hit him with her; she stated she was in fear for her life and left the area. Pierce was eventually arrested hiding in a fast-food restaurant bathroom.

    11.      When police initially responded to the scene, Pierce's Jeep Grand Cherokee was not drivable, and he could not be located. Officers arranged for the SUV to be towed and conducted an inventory search. Police located three firearms

6

in the back hatch area of the Jeep. A check of the vehicle's rental agreement found that it was rented on April 30, 2022, to Mitchell Pierce.

12. On May 17, 2022, the Michigan State Police obtained and served a search warrant on the 2022 Jeep Grand Cherokee. The search warrant resulted in the seizure of items of evidence, including the **Subject Devices**. The **Subject Devices** were located inside a blue duffle bag in the vehicle. The **Subject Devices** were collected and are maintained in the custody of the Michigan State Police.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

13. The warrant applied for would authorize the extraction and copying of electronically stored information, all under Rule 41(e)(2)(B).

14. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

15. *Forensic evidence.* This application seeks permission to locate forensic electronic evidence that establishes how the **Subject Devices** were used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Devices** because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

7

b.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

16.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Devices** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted

scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

17. Because this warrant permits the forensic review of electronic devices already in law enforcement custody, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## CONCLUSION

Based on the above facts, I submit there is probable cause to believe that the **Subject Devices** described in Attachment A contains evidence and fruits of crimes, as further described in Attachment B, specifically relating to violations of 18 U.S.C. §§ 875(c) [Interstate Communication with a Threat to Injure] and 2261A [Stalking] in the Western Judicial District of Michigan.